[Cite as *In re M.C.*, 2021-Ohio-3703.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| M.C. | : | CASE NO. CA2021-03-010 |
| | : | O P I N I O N<br>10/18/2021 |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2019JG25459

Brinkman & Associates, and Karen R. Brinkman, for appellee.

Caparella-Kraemer & Associates, LLC, and Courtney Caparella-Kraemer, for appellant.

**PIPER, P.J.**

{¶ 1}  Appellant, J.C. ("Father"), appeals decisions made by the Clermont County Court of Common Pleas, Juvenile Division, regarding the child ("M.C."), which appellant and appellee, J.D. ("Mother"), had together.

{¶ 2}  Mother and Father were never married, though the two lived together for some time prior to the child's birth in 2017.  In 2018, the parties separated.  After reunifying for several months, the couple again separated in April 2019.  The parties agreed to an oral parenting time agreement wherein Father exercised parenting time every week from Wednesday until Friday and alternating Saturdays.  In 2020, M.C. began to attend preschool, and the parenting schedule was modified to account for the time the child was

in preschool.

{¶ 3}  After Father and Mother's final separation, their parenting relationship was strained and they had poor communication with each other.  Father filed a complaint for shared parenting, and Mother filed a complaint for sole custody.  After a hearing on the matter, the juvenile court designated Mother as the residential parent and legal custodian of M.C. and granted Father parenting time from Wednesday until Friday morning, as well as alternating weekends from Friday evenings until Sunday evenings.  The juvenile court also ordered Father to pay monthly child support, support arrearages, as well as monthly cash medical support.  Father now appeals the juvenile court's decisions, raising the following assignments of error.

{¶ 4}  Assignment of Error No. 1:

{¶ 5}  THE JUVENILE COURT ERRED BY FAILING TO GRANT FATHER A DOWNWARD DEVIATION IN CHILD SUPPORT ALTHOUGH HE WAS GRANTED IN EXCESS OF ONE HUNDRED FORTY-SEVEN (147) OVERNIGHTS.

{¶ 6}  Father argues in his first assignment of error that the juvenile court erred in not granting him a downward deviation in his child support obligation because he receives over 147 overnights a year with the child.

{¶ 7}  According to R.C. 3119.231, which was effective before the juvenile court issued its order,[1]

> (A)  If court-ordered parenting time exceeds ninety overnights per year, the court shall consider whether to grant a deviation pursuant to section 3119.22 of the Revised Code for the reason set forth in division (C) of section 3119.23 of the Revised Code. This deviation is in addition to any adjustments provided under division (A) of section 3119.051 of the Revised Code.
>
> (B)  If court-ordered parenting time is equal to or exceeds one

---

1.  The change in law at issue became effective on March 28, 2019.

- 2 -

hundred forty-seven overnights per year, and the court does not grant a deviation under division (A) of this section, it shall specify in the order the facts that are the basis for the court's decision.

{¶ 8} Thus, R.C. 3119.231(B) requires a trial court to explain in its entry why it is not granting a downward deviation in child support to a parent who has 147 or more overnights a year. *Whitaker v. Whitaker*, 12th Dist. Fayette Nos. CA2019-05-008, CA2019-05-009, 2020-Ohio-2774, ¶ 47.

{¶ 9} As noted in the statute itself, R.C. 3119.231 works in combination with R.C. 3119.22 and 3119.23. Those statutes address a court's discretion to grant a deviation from a child support obligation after consideration of factors set forth in R.C. 3119.23 and upon a finding that child support according to the child support schedule and worksheet would be "unjust, inappropriate and therefore not in the best interest of the child."

{¶ 10} One of the factors a trial court is to consider in granting such a deviation is the "extended parenting time or extraordinary costs associated with parenting time * * *." R.C. 3119.23(C). Granting a child support deviation pursuant to R.C. 3119.22 is discretionary because the statute provides that a trial court may order an amount of child support that deviates from the amount of child support calculated pursuant to the child support schedule and worksheet.

{¶ 11} However, R.C. 3119.231(A) *mandates* that a court consider whether extended parenting time justifies a deviation when court-ordered parenting time exceeds 90 overnights per year. R.C. 3119.231(B) further mandates that a court must articulate its reason for refusing to grant a child support deviation for extended parenting time when the court-ordered parenting time equals or exceeds 147 overnights per year.

{¶ 12} A deviation pursuant to R.C. 3119.231 is "*in addition to* any adjustments provided under division (A) of section 3119.051 of the Revised Code." (Emphasis added.) Thus, when considered together, the statutes provide that if a parent has court-ordered

- 3 -

parenting time that equals or exceeds 90 overnights per year, that parent is entitled to a ten percent child support reduction.  R.C. 3119.051.  Then, and if a parent's court-ordered parenting time exceeds 90 overnights per year, the trial court shall consider whether a deviation in addition to that provided by R.C. 3119.051 is appropriate due to the parent's extended parenting time as set forth in R.C. 3119.231(A).  Further, if the parent's court-ordered parenting time equals or exceeds 147 overnights per year and the court has not granted a deviation in addition to that provided by R.C. 3119.051, the trial court must explain the basis for its decision according to R.C. 3119.231(B).

{¶ 13}  The juvenile court granted father a ten percent reduction of his child support obligation pursuant to R.C. 3119.051.  However, it is undisputed that Father's parenting time exceeds 147 overnights per year.  While the juvenile court applied the deviation for having more than 90 overnights, it did not address R.C. 3119.231(A) or the fact that Father had more than 147 overnights.  We therefore sustain Father's first assignment of error and remand for the juvenile court to comply with R.C. 3119.231.

{¶ 14}  Assignment of Error No. 2:

{¶ 15}  THE JUVENILE COURT ERRED WHEN CALCULATING CHILD CARE EXPENSES FOR CHILD SUPPORT.

{¶ 16}  Father argues in his second assignment of error that the juvenile court erred by granting Mother childcare expense based upon the fact that the child attends preschool.

{¶ 17}  In general, child support is determined using the computation worksheet set forth in R.C. 3119.022.  According to the worksheet, a residential parent's income may be given a downward adjustment for annual childcare expenses.  A juvenile court has "considerable discretion" in deciding matters related to child support, including calculating such awards.  *Blair v. Adkins*, 12th Dist. Fayette No. CA2020-10-018, 2021-Ohio-2292.  As such, "[o]ur standard of review in child support cases is abuse of discretion." *Estes v. Smith,*

12th Dist. Butler No. CA2001-09-206, 2002-Ohio-5448, ¶ 10. "A decision is unreasonable where it is not supported by a sound reasoning process." *In re L.M.*, 12th Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 22, citing *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 46.

{¶ 18} Father relies upon a case from the Second District Court of Appeals for the proposition that Mother is "prohibited" from the childcare credit because she chose to enroll M.C. in preschool rather than daycare. *In re R.H.*, 2nd Dist. Montgomery No. 26899, 2016-Ohio-6961.[2] In that case, the Second District found no abuse of discretion when the trial court did not credit a mother for expenses she paid for the child to attend a learning center where she indicated that the child had an Individual Education Plan through the Kettering Public School System.

{¶ 19} In contrast, the Eleventh District Court of Appeals reversed a trial court for not crediting a mother for childcare expenses she paid for her preschool-aged child. *Shendel v. Graham*, 11th Dist. Lake No. 2016-L-100, 2018-Ohio-2894. However, the court also noted that private school tuition was not to be credited as childcare costs when the child reached school age and could attend a free public school.

{¶ 20} The courts in these cases did not directly analyze whether preschool costs fall within the ambit of the child support worksheet. However, the differing decisions were specifically addressed in terms of whether the trial court abused its discretion in awarding or declining to award the credits. Moreover, the cases indicate that childcare costs should not be offset when the children at issue could receive a free public-school education.

---

2. We would also note that *In re R.H.* was decided prior to the modifications to the support worksheet courts currently used. The prior version required that the childcare expense be approved by the court. The current version of the worksheet requires only the recordation of "child care expense" without reference to the court. Still, whether to include the costs on the worksheet is within the juvenile court's discretion.

{¶ 21} In the case sub judice, M.C. was not yet school age when Mother enrolled him in preschool while she worked, and was thus not yet eligible to receive a free public-school education as noted in the cases above. Instead, and according to R.C. 3119.01(C)(2), childcare cost "means annual out-of-pocket costs for the care and supervision of a child or children subject to the order that is related to work or employment training." There is no evidence in the record that during his time at the preschool, M.C. was not supervised or cared for while Mother was working.

{¶ 22} Father essentially argues that his mother could watch M.C. while the parties worked so that neither party would have to pay for childcare. However, the court had not ordered Mother to utilize Father's mother as childcare during her parenting time. Thus, we do not find the juvenile court abused its discretion in awarding Mother childcare expenses as part of its child support order and overrule Father's assignment of error in part.

{¶ 23} However, the record indicates that the juvenile court included the expenses when calculating Father's child support obligation arrearage for a time when Mother did not incur such expenses. Thus, we sustain Father's assignment of error only in part, and remand for the juvenile court to recalculate the amount of arrearage Father owes based upon expenses Mother incurred *only after* she enrolled M.C. in the preschool in May 2020. We would also note that Mother indicated that the expenses are incurred 50 weeks per year, but she does not incur charges for the other two weeks. Thus, the juvenile court must also take into consideration the proper amount of weeks Mother is charged for recalculation purposes.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE JUVENILE COURT ABUSED ITS DISCRETION IN FINDING THAT HEALTH INSURANCE IS AVAILABLE TO FATHER AT A REASONABLE COST FOR THE MINOR CHILD.

{¶ 26} Father argues in his third assignment of error that the juvenile court erred when finding that health insurance was available to Father for a reasonable cost because no such evidence was submitted to support the finding.

{¶ 27} According to R.C. 3119.30(B)(1)(c),

> (B) The child support obligee is rebuttably presumed to be the appropriate parent to provide health insurance coverage for the children subject to the child support order. The order shall specify that the obligee must provide the health insurance coverage unless rebutted pursuant to division (B)(1) of this section.
>
> (1) The court or child support enforcement agency may consider the following factors to rebut the presumption when determining if the child support obligor is the appropriate parent to provide health insurance coverage:
>
> (c) The obligor can obtain health insurance coverage for the child that is reasonable in cost through an employer or other source. For employer-based coverage, the court or child support enforcement agency shall consider the length of time the obligor has worked with the employer and the stability of the insurance.

According to R.C. 3119.29(F), reasonable cost means that "the cost of health insurance coverage to the person required to provide health insurance coverage for the children who are the subject of the child support order does not exceed an amount equal to five per cent of the annual income of that person."

{¶ 28} The record indicates that Father testified that health insurance coverage was available for the child "at a cost." However, Father did not know what that cost would be, as he had just started a new job. Thus, no evidence was presented that the costs to Father to provide insurance would be reasonable. However, no evidence was submitted that the costs would be *unreasonable*, or more than five percent.

{¶ 29} Even so, Mother concedes in her brief that the issue was not fully addressed at the hearing, and that she is able to provide full coverage for the child. Thus, we sustain

Father's assignment of error and remand so that the juvenile court can consider sufficient information from the parties in order to modify its order regarding the obligation to provide insurance for the child.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE JUVENILE COURT GRANTED MOTHER CUSTODY OF THE MINOR CHILD ALTHOUGH IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 32} In his fourth assignment of error, Father argues that the juvenile court improperly designated Mother residential parent of the child rather than granting shared parenting.

{¶ 33} R.C. 3109.04 governs the award of parental rights and responsibilities. In making this determination, the primary concern is the best interest of the child. *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 22. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the trial court to consider all relevant factors. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8.

{¶ 34} These factors include, but are not limited to: (1) the wishes of the parents, (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest, (3) the child's adjustment to home, school and community, (4) the mental and physical health of all persons involved, and (5) the likelihood that the caregiver would honor and facilitate visitation and parenting time. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 14.

{¶ 35} R.C. 3109.04(F)(2) provides additional factors to those stated above that a court must consider when determining whether a shared parenting agreement is in the best interests of the children. These include,

(a) The ability of the parents to cooperate and make decisions

jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 36} An appellate court will not disturb a trial court's decision with regard to the allocation of parental rights and responsibilities absent an abuse of discretion. *Rainey v. Rainey*, 12th Dist. Clermont No. CA2010-10-083, 2011-Ohio-4343, ¶ 15. When reviewing a trial court's decision, an appellate court "may not substitute its judgment for that of the trial court because the 'discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Renner v. Renner*, 12th Dist. Clermont No. CA2014-01-004, 2014-Ohio-2237, ¶ 16, quoting *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-02-019 and CA2008-03-021, 2009-Ohio-2201, ¶ 15.

{¶ 37} After reviewing the record, we find that the juvenile court did not abuse its discretion in designating Mother residential parent of the child after finding that shared parenting was not in the child's best interest. Specific to shared parenting, the juvenile court considered that Mother opposed shared parenting, and the parties continue to have difficulty in communicating civilly with one other. Although communication had improved since the parties' separation, the parties continue to communicate "almost exclusively" via text message and Mother testified that she and Father are not able to make joint decisions. Mother also testified that she has "always done everything" for the child, makes the key

decisions involving the child, and that Father has only attended two of the child's medical appointments.

{¶ 38} The juvenile court also considered that the parties have a history of involving the police when they have conflicts and that Mother voiced concerns regarding the child's safety while in Father's care, including the child's access to a swimming pool. Mother also raised concerns regarding the child's presence around Father's older son, who has been diagnosed with obsessive compulsive disorder. Based on these considerations, the juvenile court found that shared parenting was not the in child's best interest. Reviewing the record, we find no abuse of discretion in that decision.

{¶ 39} Regarding the designation of Mother as residential parent, the juvenile court considered that while Father wanted shared parenting, Mother wanted to have sole custody of the child. The court did not perform an in camera interview with the child, but noted that the child has adjusted to both homes and has also adapted well to being in daycare. The child has positive relationships with Father's older children from a previous relationship, as well as Father's parents. The child also has a bonded relationship with Mother's current boyfriend.

{¶ 40} The juvenile court also considered that neither Mother nor Father have any mental or physical health issues, but that Father's older son has been diagnosed with obsessive compulsive disorder, as noted above. Both parties have cooperated with the parenting schedule that they first agreed to, and the court did not have any concerns that either party would fail to facilitate any ordered arrangements. The other factors listed in the statute are inapplicable.

{¶ 41} Based on the evidence presented, the juvenile court cogently determined that while shared parenting was not in the child's best interests, the parties should, however, continue to maximize Father's parenting time and include him in the child's activities and

medical care. We do not find the juvenile court abused its discretion in naming Mother the residential parent and legal custodian, while also granting Father ample parenting time with the child. Father's fourth assignment of error is accordingly overruled.

{¶ 42} Assignment of Error No. 5:

{¶ 43} THE JUVENILE COURT ERRED BY FAILING TO ALLOCATE THE TAX EXEMPTION FOR THE MINOR CHILD.

{¶ 44} Father argues in his final assignment of error that the juvenile court erred by not allocating a tax exemption for the child.

{¶ 45} According to R.C. 3119.82, when ordering child support, "the court shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * *."

{¶ 46} The statute uses the mandatory word "shall" when referring to the trial court's duty to designate which parent may claim the children as tax exemptions. *Willier v. Willier*, 175 Ohio App.3d 793, 2008-Ohio-740, ¶ 19 (3d Dist.). Thus, the trial court must make this designation in its order. *Horvath v. Horvath,* 5th Dist. Stark No. 2004-CA-00160, 2004-Ohio-6764, ¶ 7; *Henderson v. Henderson,* 3rd Dist. Mercer No. 10-05-04, 2005-Ohio-3883.

{¶ 47} The juvenile court did not designate which party would have the tax exemption for the child. Father's assignment of error is, therefore, sustained. On remand, the juvenile court shall designate how the tax exemption is to be allocated.

{¶ 48} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

M. POWELL and BYRNE, JJ., concur.